UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 18-304 (JRT)

UNITED STATES OF AMERICA,

    Plaintiff,

v.

JEROME ROBERT HENNESSEY,

    Defendant.

**SENTENCING POSITION OF THE UNITED STATES**

The United States of America, by and through its attorneys, Erica H. MacDonald, United States Attorney for the District of Minnesota, and John Kokkinen, Assistant U.S. Attorney, submits its sentencing position for Jerome Robert Hennessey.

## **BACKGROUND**

The United States agrees that the facts as set forth in the Presentence Investigation Report ("PSR") accurately summarize the relevant offense conduct and requests that the Court adopt the facts summarized in the PSR.

Hennessey pleaded guilty to the both counts of a two-count information charging him with mail fraud, in violation of 18 U.S.C. § 1341, and income tax evasion, in violation of 26 U.S.C. § 7201. The charges stem from Hennessey's years-long scheme to defraud his employer, the Ashby Farmers Cooperative Elevator Company ("the Co-op"). PSR ¶ 7.

The Co-op consisted of approximately 200 member farmers in the area of Ashby, Minnesota. Because most of the member farmers operate small or mid-sized farms, they generally cannot afford to build their own bin systems to store the crops that they individually generate. Accordingly, member farmers pooled their resources through the Co-op in order to operate the grain elevator that serves all of the members. In addition to being such a vital component of the member farmers' ability to run their businesses, various other individuals and businesses throughout the greater community depended on the economic activity generated by the Co-op.

The members of the Co-op contributed certain amounts of their crops to the Co-op. In addition, the Co-op purchased additional amounts of crops from member farmers and non-member farmers. The Co-op then sold crops through the commodities markets and used the proceeds to cover the payments to farmers for the crops they contributed or sold to the Co-op, as well as the operating costs of the Co-op and the wages for the approximately six individuals who were employed by the Co-op, one of whom was Hennessey. Profits from the Co-op's business activities were distributed to the member farmers.

*The Fraud Scheme*

Hennessey worked at the Co-op from 1988 until September 2018.  PSR ¶¶ 7, 80.  As the Co-op's general manager, Hennessey oversaw the Co-op's day-to-day operations, including exercising control over the Co-op's bank accounts and obtaining loans to support the Co-op's operations.  *Id.* ¶7.  Beginning in 2003, however, Hennessey began using his position as the general manager to steal millions of dollars from the Co-op.  *Id.*  Specifically, over the course of more than fifteen years, Hennessey wrote a large number of checks for large amounts to himself and to third parties for expenses Hennessey incurred for his own personal benefit.  *Id.* ¶¶ 9, 11.

Since at least 2003, Hennessey wrote dozens of checks to himself totaling more than $1.1 million.  *Id.* ¶ 11.  The amounts on these checks varied from a few thousand dollars to as much as $135,000.  Hennessey provided carbon copies of these checks to the Co-op's bookkeeper so that the bookkeeper could enter the transactions into the Co-op's records.  *Id.* ¶ 12.  Hennessey caused these carbon copies to contain handwritten notes indicating that the checks should be booked as having been for legitimate Co-op expenses such as the purchase of soybeans, corn, grain, feed, and meeting expenses.  *Id.*  In reality, Hennessey had used the proceeds from these checks to pay for personal expenses, including to pay for renovations and building additions to his

residence and a hunting cabin, the purchase of all-terrain vehicles, large balances on his personal credit cards, and property taxes on several pieces of land owned by him. *Id.* ¶ 9.

In addition to these dozens of checks that Hennessey wrote to directly to himself, Hennessey wrote hundreds of other checks totaling approximately $1.4 million to his personal credit card accounts. *Id.* ¶ 13. As with the checks that Hennessey wrote directly to himself, he provided carbon copies of these checks to the bookkeeper that contained handwritten notes indicating that the checks were for legitimate Co-op expenses. *Id.* ¶12. In reality, Hennessey had not used his credit cards to pay for such expenses but to pay for, among other things, home improvements to his personal residence, hunting trips, taxidermy services, the costs of shipping animals he had killed during hunting trips, and the purchase of furniture, jewelry, all-terrain vehicles, clothing, entertainment, personal travel, and attachments for a Bobcat® skid steer loader. *Id.* ¶ 9.

Lastly, Hennessey wrote more than 100 checks to hunting outfitters (including a hunting outfitter that took Hennessey on an overseas hunt in August 2018, just days before his offense was detected), taxidermists, car dealers, retailers of all-terrain vehicles, and a construction company that performed work at Hennessey's home and hunting property. *Id.* The checks

4

that Hennessey wrote for these purposes totaled approximately $1.9 million. Hennessey also wrote more than $400,000 worth of checks to make payments toward the purchase of hunting property in Kanabec County. *Id.* ¶ 13. Again, Hennessey provided carbon copies of these checks to the Co-op's bookkeeper that contained handwritten notes indicating that the checks were for legitimate Co-op expenses. *Id.* ¶ 12.

All total, from 2003 through 2018, Hennessey fraudulently wrote $5,338,922.21 in checks drawn on the Co-op's bank accounts for the personal purposes described above. *Id.* ¶ 14.

*Tax Evasion*

On his 2011 through 2017 federal income tax returns, Hennessey falsely reported only his wages and bonuses (if any) from the Co-op and did not report any of the millions of dollars in income he realized through the fraud scheme. *Id.* ¶¶ 15-16. Specifically, Hennessey underreported the following amounts of income in 2011 through 2017:

| Year | 2011 | 2012 | 2013 | 2014 | 2015 | 2016 | 2017 |
|---|---|---|---|---|---|---|---|
| **Unreported Income** | $174,593 | $387,533 | $775,040 | $721,390 | $671,016 | $387,150 | $410,780 |

Hennessey's tax evasion resulted in a total tax loss of $1,627,301.45, which consists of $1,218.453 in federal tax loss and $408,848.45 in state tax loss. *Id.* ¶ 17.

*Hennessey's Conduct After His Fraud Was Discovered*

In August 2018, a bank that had previously issued a line of credit to the Co-op called its line of credit due. The Co-op, in attempting to respond to the bank, learned that the line of credit, which had been applied for and obtained by Hennessey, had been secured by Hennessey's claim that the Co-op had $7 million worth of assets (i.e, grain) to serve as collateral on the line of credit. At the time, the Co-op possessed only approximately $50,000 worth of grain. The Co-op reached out to Hennessey while he was overseas for an explanation. Hennessey agreed to meet with the Co-op's board of directors on the morning of September 10, 2018. *Id.* ¶8. The board of directors showed up for that meeting but Hennessey did not. *Id.*

Subsequent investigation revealed that Hennessey initially fled to Iowa before later returning to Minnesota. In late November and early December 2018, Hennessey began making arrangements to surrender to law enforcement, and, on December 4, 2018, Hennessey made his first appearance on a federal complaint charging him with wire fraud.

## SENTENCING GUIDELINES CALCULATION

As the PSR correctly observed, the base offense level for wire fraud convictions is seven. PSR ¶ 25. The PSR correctly assessed an eighteen-level increase because the loss amount was more than $3,500,000 but not more than

$9,500,000; a two-level increase because the offense involved 10 or more victims or caused a substantial financial hardship to at least one victim (the Co-op); a two-level increase because Hennessey derived more than $1 million in gross receipts from one ore more financial institutions; and a two-level increase because the defendant abused a position of private trust in a manner that significantly facilitated the commission and concealment of the offense. *Id*. ¶¶ 27, 29, 32. Applying a three-level reduction for acceptance of responsibility, the PSR correctly calculates a total offense level of 28. *Id*. ¶¶ 44-46.

Based on a total offense level of 28 and a criminal history category of I, the Guidelines ranges are 78 to 97 months' imprisonment, one to three years of supervised release, and a fine between $25,000 and $250,000. *Id*. ¶¶ 86, 91, 97. The Mandatory Victim Restitution Act applies as to Count 1 in the amount of $5,338,922.21 owed to the Co-op, and, per the agreement of the parties and 18 U.S.C. § 3663(a)(3), the Victim Witness Protection Act applies to Count 2 in the amount of $1,218,453 owed to the IRS. *Id*. ¶ 99.

## SECTION 3553(a) SENTENCING FACTORS

After calculating a defendant's Sentencing Guidelines range and hearing from the parties, the Court must consider applicable sentencing factors under 18 U.S.C. § 3553(a) to determine an appropriate sentence. Section 3553(a)

requires the Court to analyze a number of factors, including the nature and circumstances of the offense; the history and characteristics of the defendant; the need for the sentence to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence to criminal conduct, and protect the public from further crimes of the defendant; and the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

  Hennessey's fraud scheme against the Co-op was egregious.  He carried it out through 449 checks spread out over the course of more than 15 years.  He perpetuated and conceal it from others by placing facially false descriptions on the carbon copies of nearly all of those checks.  He used the gains to fund a lavish lifestyle as a big-game hunter:











All at the expense of the victims, the Co-op but more importantly, the Co-op's member farmers. Member farmers who lived in the same community as he. People who were his colleagues, friends, and neighbors. For fifteen years, Hennessey lived among these fellow members of the community while repeatedly lying to them and stealing from them. A lengthy sentence is necessary to reflect the seriousness of Hennessey's offense and to provide some measure of retribution—inadequate as it might be when compared to the devastation he caused to his victims.[1]

As to Hennessey's history and characteristics, the PSR reveals nothing that might suggest that a sentence below the guidelines would be warranted. All indications are that he was raised in a positive setting and has enjoyed the benefits of a successful occupation, a loving family, and an adequate support network. It cannot be argued, therefore, that Hennessey is somehow a victim a circumstance, that his crime was simply a predictable consequence of the environment the surrounded him.

The guidelines calculation in this case produces a guidelines range of imprisonment of 78 to 97 months. There is nothing about the particulars of this case, the way the guidelines were calculated, or Hennessey's history and

---

[1] The board of directors has submitted a letter to the Court summarizing the devastation caused by Hennessey's crime, and the United States anticipates that other members of the community may submit additional letters and/or request to speak at the sentencing hearing.

characteristics that would suggest that a sentence within the guidelines range would result in any unwarranted sentencing disparities. Instead, the greater risk of an unwarranted sentencing disparity would arise were Hennessey to receive a below-the-guidelines sentence.

## CONCLUSION

The United States respectfully submits that the advisory guideline range calculated in the PSR is an accurate indication of a sentence that would be sufficient, but not greater than necessary, to serve all of the factors set forth in 18 U.S.C. § 3553(a). The United States respectfully asks the Court to consider all the information disclosed in the PSR, as well as all the filings in this case, and impose a sentence that within the guidelines range of 78 to 97 months, along with an order of full restitution in the amount of $5,338,922.21 to the Co-op and $1,218,453 to the IRS.

Dated: June 12, 2019

Respectfully submitted,

ERICA H. MacDONALD
United States Attorney

*/s/ John Kokkinen*

BY: JOHN KOKKINEN
Assistant U.S. Attorney