# UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Case No.: 18-CR-00304-001 (JRT)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | **POSITION OF DEFENDANT** |
| Plaintiff, | ) | **REGARDING SENTENCING** |
| | ) | **PURSUANT TO LOCAL RULE** |
| v. | ) | **83.10 OF THE U.S. DISTRICT** |
| | ) | **COURT FOR THE DISTRICT** |
| JEROME ROBERT HENNESSEY | ) | **OF MINNESOTA** |
| | ) | |
| Defendant. | ) | |

## INTRODUCTION

The defendant, Jerome Hennessey, is before the Court for sentencing having pleaded guilty to mail fraud, in violation of 18 U.S.C. § 1341, and income tax evasion, in violation of 26 U.S.C. § 7201. Pursuant LR 83.10 (e), of the Local Rules of the District of Minnesota, the defendant submits his Position Regarding Sentencing. This document presents the position of the defendant with respect to both the sentencing guidelines and the sentencing factors set forth in 18 U.S.C. § 3553(a). This document also includes the request of the defendant for a specific sentence. The personal statement of the defendant, report of Peter Marston, Ph.D., and letters of support are included. The defendant requests that the Court sentence him to imprisonment for 70 months, representing a modest variance from the guidelines.

## I.   POSITION WITH RESPECT TO SENTENCING GUIDELINES

The Guidelines provide for a total offense level of 28 with a criminal history category of I. The starting point in the sentencing analysis is for the district court to consult the federal sentencing guidelines ("the Guidelines"). *Rosales-Mireles*, 138 S. Ct. at 1904. However, the Guidelines are

advisory, and the sentencing judge is not bound by them. *Id.* "[T]he district court is prohibited from presuming that the Guidelines range is reasonable." *United States v. Feemster*, 572 F.3d 455, 461 (8th Cir. 2009) (citing *Gall*, 552 U.S. at 50). Instead, the court must make an individualized assessment based on the facts presented in that particular case for that particular defendant. *Id.* (citing *Gall*, 552 U.S. at 50). The nuanced, fact-based approach to sentencing is in keeping with the long practice recognized by the Supreme Court:

> It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue.

*Koon v. United States*, 518 U.S. 81, 113, 116 S.Ct. 2035, 2053 (1996) (quoted in *Pepper*, 131 S.Ct. at 1240).

"Each year, thousands of individuals are sentenced to terms of imprisonment for violations of federal law." *Rosales-Mireles v. United States*, 138 S. Ct. 1897, 1903 (2018). District court sentencing judges have significant discretion to "determine in each case what constitutes a sentence that is sufficient, but not greater than necessary, to achieve the overarching sentencing purposes of retribution, deterrence, incapacitation, and rehabilitation." *Id.* (internal citations and quotations omitted). The court should "consider every convicted person as an individual and every case as a unique study in the human failings" when imposing a criminal defendant's sentence. *Gall v. United States*, 552 U.S. 38, 52 (2007) (internal citation omitted).

## II. POSITION WITH RESPECT TO SENTENCING FACTORS IN § 3553(a)

In addition to consulting the applicable advisory Guidelines, the sentencing judge "must always take account of certain statutory factors" codified in 18 U.S.C. § 3553(a). *Chavez-Meza*, 138 S. Ct. at 1963. After considering the starting point from the Guidelines, "the district court must

independently consider all the sentencing factors in 18 U.S.C. § 3553(a) to determine the appropriate sentence." *United States v. Ibarra-Sandoval*, 265 F. Supp. 3d 1249, 1251 (D.N.M. 2017) (citing *Gall*, 552 U.S. at 49-50).

### A. Nature and Characteristics of the Offense and the History and Characteristics of the Defendant

- **Nature and Characteristics of the Offense**

The Presentence Report has covered the Nature and Characteristics of the Offense. The offense conduct involves the fraudulent embezzlement of funds and the failure to pay federal income taxes on the ill-gotten gains.

- **History and Characteristics of the Defendant**

Jerome Hennessey is proud of the family he has raised. Prior to the investigation for the instant offense, Mr. Hennessey's life revolved around his high school sweetheart, Becky, who became his wife and mother to his four children. Raised in a loving home himself, and a successful athlete when he was young, Mr. Hennessey has always taken pride in his accomplishments, perhaps to a fault.

Mr. Hennessey's commitment to raising a family as happy as the one in which he grew up. At just eighteen years old, he abandoned his full-ride scholarship to college to help raise his first daughter, Jill. Together, Jerry and Becky raised Jill, Holly, Kayla, and Shane.

Meanwhile, Mr. Hennessey had built a successful career as the general manager of the Ashby Farmers Co-Operative Elevator Company ("Co-Op"). At the time of his Indictment, Mr. Hennessey had devoted twenty-nine years of his life to the Co-Op, overseeing day-to-day operations and finances for the business. A charismatic man, Mr. Hennessey became well-known and well-liked in the surrounding rural Minnesota community.

During the initial fifteen plus years of his management, Mr. Hennessey was able to build the business of the Co-Op. When he stepped in as the general manager, the financial position of the Co-Op was close to desperate. The defendant became skillful at option trading, the profits of which went to the Co-Op. His reputation as a trader spread and he personally advised local farmers on profitable trades. The market conditions were also favorable, which contributed to the improving financial position of the Co-Op.

Around the year 2004, the personal life of the defendant began to deteriorate. Mr. Hennessey and his wife separated and began to see other people. Around 2005, the defendant and his wife reconciled. As part of an attempt to begin a better life with her, they began recreational hunting. This led to the desire to go on safaris and hunt big game. Unfortunately, the defendant could not afford the expense of exotic trips. He began to embezzle money from the Co-Op by fraudulently covering his personal expenses with Co-Op funds. This continued through 2018. He deceived himself with the idea that he would always make enough money to cover the misappropriations.

Toward the end of the scheme, the financial condition of the Co-Op was in peril. Market conditions became unfavorable and the Co-Op began to lose money. Individual farmers began seeking special treatment and the defendant obliged. The option trading began to be generally unsuccessful. The accounts receivable began to mount. Mr. Hennessey made some poor management decisions. Inevitably, the Co-Op would not be able to meet its obligations to the bank and the creditors.

When Mr. Hennessey realized the Co-Op and its Board of Directors had discovered the fraud, his wrongdoing was undeniable. Horrified at his own actions, Mr. Hennessey fled. He was missing for approximately two months, but eventually surrendered himself to the authorities

voluntarily. He has since lost many of his friendships and relationships in his community, and his marriage is dissolved. Mr. Hennessey knows he has harmed the Co-Op he loved and cared for almost three decades, and his actions can never be revoked. Mr. Hennessey has no excuse for his actions. As he succinctly told the Probation Officer at the pre-sentence interview, he "really screwed up." PSR ¶ 21.

Since his indictment, the family has come together in support of one another. Mr. Hennessey has worked to get his diabetes and penchant for alcohol under control. He is amenable to any necessary treatment. Mr. Hennessey, having left the Co-Op the day after his conduct was discovered, spends his newly found free time providing childcare for his grandchildren. Mr. Hennessey's daughter, Jill, has been particularly grateful for Mr. Hennessey's presence during her eleven-year-old daughter's fight with cancer. Mr. Hennessey and his family recognize the collateral consequences that his actions have taken, but they also understand the gravity of Mr. Hennessey's actions.

The defendant entered a plea of guilty without delay. Even before he entered his plea, the defendant acknowledged his guilt to the federal government and to lawyers investigating him on behalf of the Co-Op. He has continued to cooperate in liquidating assets and preparing his home for sale. He has worked closely with the attorney for the creditors, Erik Ahlgren, who has indicated that he would notify the Court of this genuine cooperation. He has actively sought resolution of forfeiture issues brought by the federal government.

**B. The Need for the Sentence Imposed**

    **a. To Reflect the Seriousness of the Offense, to Promote Respect for the Law, and to Provide Just Punishment for the Offense**

The request of Mr. Hennessey for a sentence of 70 months does not minimize the seriousness of his offense. The Sentencing Guidelines are based on the Sentencing Commission's

empirical studies of criminology and punishment. *See, e.g.*, United States Sentencing Commission, What *Does Federal Economic Crime Really Look Like?* (Jan. 2019), https://www.ussc.gov/sites/default/files/pdf/researchandpublications/researchpublications/2019/20190130_Econ-Crime.pdf (concluding disaggregated findings from research show "significant differences in offender and offense characteristics, [causing different] sentencing outcomes" for different economic crimes). Mr. Hennessey urges this Court to follow the Commission's empirically-based recommendation, with a slight variance. Under the punishment principle known as parsimony, "the sentence imposed should be no more severe than necessary to achieve", Richard S. Frase, *Preface and Introduction* in JUST SENTENCING: PRINCIPLES AND PROCEDURES FOR A WORKABLE SYSTEM 11–12 (2013).the goals of § 3553(a).

### b. To Afford Adequate Deterrence to Criminal Conduct

A sentence of 70 months in addition to the collateral consequences of Mr. Hennessey's conduct and criminal conviction is a sufficient deterrence from re-offending. Studies have shown *no evidence* for the "chastening effect," a theory in which "increasing the severity of the prison experience . . . mak[es] individuals less likely to commit crimes in the future." National Institute of Justice, *Five Things about Deterrence* (May 2016), https://www.ncjrs.gov/pdffiles1/nij/247350.pdf. Instead, research has found that "compared to non-custodial sanctions, incarceration has a null or mildly criminogenic impact on future criminal involvement." *Id.* (quoting Daniel S. Nagin et al., *Imprisonment and Reoffending*, 38 CRIME & JUSTICE 115 (Michael Tonry, ed. 2009).

### c. To Protect the Public from Further Crimes of the Defendant

Mr. Hennessey has no serious criminal history. He has not been investigated for any wrongdoing other than the immediate offense. There is little risk of recidivism.

> **d. To Provide the Defendant with Needed Educational or Vocational Training, Medical Care, or Other Correctional Treatment in the Most Efficient Manner**

Mr. Hennessey's psychological evaluator noted in the Presentence Report that Mr. Hennessey is capable of higher education and skilled trade. PSR ¶ 71. The psychological evaluation revealed that Mr. Hennessey is able to learn from his mistake, rather than continue to offend after serving his sentence. Programs are available to the defendant within the system and he is motivated to enter these.

The defendant would benefit from treatment for alcohol dependency. This treatment could be provided through the federal correctional system.

**C. The Kinds of Sentences Available**

The Court has sentencing options of custody, supervised release, and probation. As stated in the PSR ¶ 94, "Since the applicable guideline range is in Zone D of the Sentencing Table, the defendant is ineligible for probation. USSG §5B1.1, comment.(n.2)." The Court is free to depart or vary in its discretion.

**D. The Kinds of Sentence and Sentencing Range in the Guidelines**

Part D. of the Presentence Report covers this topic.

**E. Any Pertinent Policy Statement**

Mr. Hennessey has found no applicable policy statement.

**F. The Need to Avoid Unwarranted Disparities**

Courts in the District of Minnesota and the 8th Circuit depart or vary downward from the sentencing guidelines in a substantial percentage of cases. <u>U. S. Sentencing Commission's 2018 Sourcebook of Federal Sentencing Statistics</u>.

### G. The Need to Provide Restitution to Any Victims of the Offense

The defendant has agreed in his plea agreement to the payment of restitution. The total amount of the restitution agreed to is $5,338,922.21. In calculating this dollar amount, investigators relied upon financial records and credit card charges, among other resources. While the defendant has noted there are some errors in which he was charged with personal expenses paid for by the Co-Op, he is willing to accept the agreed upon restitution amount. For example, Kamrath Construction charges were allocated to him in the amount of more than $100,000.00, but the defendant believes that these expenses were all for the benefit of the Co-Op. Likewise, a check for $25,000.00 to Chris Belkey was doubled counted. Additionally, the defendant feels that some credit card charges claimed to be personal were in fact expenses which may have been for the benefit of the Co-Op amounting to almost $300,000.00. The defendant acknowledges that the victims may feel the actual loss is greater than the agreed upon restitution. Therefore, he does not request a hearing on restitution and stands by his plea agreement.

### III. POSITION OF ISSUES IN DISPUTE

Mr. Hennessey does not dispute any issues in the Presentence Report.

### IV. RELIANCE ON THE FINAL PRESENTENCE REPORT TO RESOLVE THE DISPUTE

No disputes remain to be resolved.

### V. REQUEST FOR AN EVIDENTIARY HEARING

Mr. Hennessey does not request an evidentiary hearing.

### VI. REQUEST TO BE ALLOWED TO VOLUNTARY SURRENDER

The defendant request that he be allowed to voluntarily surrender to his designated Federal Corrections Institution (FCI). The defendant requests that he be allowed to surrender himself on

the date that is five weeks following his sentencing. The defendant requests this five-week time period to allow him to continue his efforts of liquidating his assets. He has been an active participant in the selling of his assets and has been working on this endeavor with the Court appointed creditor lawyer in Fergus Falls, Minnesota. He actively marketing, and preparing for sale the following:

> A boat, a fish house, a bobcat, guns, material for taxidermy, two homes, miscellaneous tools and equipment, and a trailer.

In addition, he has been cooperating and providing information in civil litigation which is being brought to recover money damages. The attorney for the creditors would like his availability for depositions and continued interviews.

Finally, the defendant after sentencing, and before he reports to his designated FCI, will need time to prepare his proper medical supplies for treatment of his diabetes. He needs to maintain a constant and consistent medication administered through a pump. His health would suffer with an interruption to this treatment.

The defendant requests that this Court recommend that he be confined in FCI – Duluth.

## VII. REQUEST FOR TREATMENT

The defendant requests that this Court recommend that he be admitted to a residential alcohol treatment program while serving his sentence.

## VIII. SPECIFIC REQUEST FOR A SENTENCE

The defendant respectfully requests that he be sentenced to a period of confinement of 70 months. This represents a variance from the low range of the guidelines of 8 months. The defendant requests this variance based upon his immediate acceptance of responsibility, his remorse, his continued cooperation, and his desire to begin restitution payments as soon as possible. Balancing this variance, the defendant expects his time under supervised release to be at the maximum.

The defendant attaches his personal statement to the Court and apologizes to the victims of his offense.

## CONCLUSION

Mr. Hennessey respectfully requests that the Court vary from the lower end of the recommended guideline range to 70 months. Mr. Hennessey is remorseful. He is cooperative, pleading guilty without delay. Mr. Hennessey has worked with the appropriate authorities to start restitution for his actions. The defendant has strong family support. Mr. Hennessey will work for the rest of his life to pay for the harm he has done.

Dated: June 12, 2019

*s/THOMAS M. KELLY*
Thomas M. Kelly
Attorney ID No. 54914

650 3rd Ave S, Suite 260
Minneapolis, MN 55402
(612) 339-5055

Attorney for Defendant